IN THE UNITED STATED DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

MORTON E. GOLDSTEIN,

Plaintiff,

v.

CITY OF BOYNTON BEACH, FLORIDA,

Defendant.

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, MORTON E. GOLDSTEIN ("GOLDSTEIN"), sues the CITY OF BOYNTON

BEACH, FLORIDA ("BOYNTON"), and alleges:

**Jurisdiction and Venue**

1.      This is an action for damages and injunctive relief for/from violations of the Age

Discrimination in Employment Act ("ADEA") (29 U.S.C. §621, et. seq.), the Americans with

Disabilities Act ("ADA') (42 U.S.C. §1201, et. seq.), and the Florida Civil Rights Act ("FCRA")

(§760.01, et. seq.), and for attorney's fees and costs including expert fees.

2.      This Court has jurisdiction of this action pursuant to 28 U.S.C. §§1331, 1343(a)(4),

and 1367, 29 U.S.C. §626(c), 42 U.S.C. §12117(a), 42 U.S.C. §2000e-5(f)(3), and §760.11(4)(a),

F.S.

3.      Venue is proper in this Court: (i) pursuant to 28 U.S.C. §1391(b), because

BOYNTON "resides" in the Southern District of Florida (in Palm Beach County) and a substantial

part of the events or omissions giving rise to the claims occurred in the Southern District of Florida;

and (ii) pursuant to 42 U.S.C. §2000e-5(f)(3), because the unlawful employment practice is alleged

to have been committed and the employment records relevant to such practice are maintained and administered in the Southern District of Florida.

## Parties

4.      GOLDSTEIN, is a natural person who resides in Palm Beach County, Florida.

5.      At all materials times,  GOLDSTEIN was an employee of BOYNTON within the meaning of the Section 630(f) of the ADEA and Section 12111(4) of the ADA employed in BOYNTON's library.

6.      At the time of the actions complained of, GOLDSTEIN was either 79 or 80 years old.

7.      At the time of the actions complained of, GOLDSTEIN had a disability as that term is defined under Section 12102 of the ADA because there were limitations on his ability to walk, lift objects, and bend and/or he was regarded by BOYNTON as having such impairments.  During the times of the actions complained of, GOLDSTEIN also was handicapped within the meaning given that term by the FCRA.

8.      BOYNTON is a municipal corporation under the laws of the State of Florida located in Palm Beach County.

9.      At all material times, BOYNTON was GOLDSTEIN's employer within the meaning of the Section 630(b) of the ADEA, Section 12111(5) of the ADA, and Section 760.02(7) of the FCRA.

## General Allegations

10.      GOLDSTEIN began working for BOYNTON as a part-time library page, a position he was well qualified for, on March 27, 2006 and he continued in that position until he was terminated.  GOLDSTEIN was always an exemplary worker for BOYNTON and BOYNTON never had any complaints about his performance.

11.     In 2011, GOLDSTEIN needed a hip replacement and arranged to have the surgery scheduled for the library's less busy summer season.

12.     On July 6, 2011, GOLDSTEIN met with the Director of BOYNTON'S library, Craig Clark ("Clark"), and Network Administrator, Mike Naughton (GOLDSTEIN's immediate supervisor), to request a four-month leave of absence due to his upcoming hip replacement surgery and, on July 10, 2011, GOLDSTEIN made this request in writing.

13.     This request for a four month leave was denied by BOYNTON on July 20, 2011.

14.     After his initial request for leave was denied, GOLDSTEIN, consulted with his physicians to get their assessment of how long his recovery would be.  After consulting with these physicians, in correspondence delivered to BOYNTON on July 23, 2011, GOLDSTEIN modified his request for leave advising that he would have his surgery on July 25, 2011 and could return to work in "September 2011."  A copy of this request is attached hereto as Exhibit "A."

15.     As of the end September 2011, GOLDSTEIN would have been able to perform the functions of a library page with one reasonable and, indeed, very minor, accommodation and, soon thereafter, with no accommodations at all.  Indeed, as of the end of September 2011, the only task of a library page GOLDSTEIN would have had difficulty doing would have been re-shelving books on the very bottom shelves in the library and even this limitation would have ended by early November 2011.  However, for the convenience of library patrons and pages, the bottom shelves in the library were very rarely used.  Moreover, there was almost always two library pages on duty and the page other than GOLDSTEIN could have reshelved books on the bottom shelves on those rare occasions from the end of September through early November when those few books belonging on the bottom shelves needed to be reshelved.

16.     Prior to GOLDSTEIN's request for leave, BOYNTON had made plans to lay off a

30 year old non-disabled library page, Kristine Kreidler, effective on September 30, 2011. However, after GOLDSTEIN made his initial request for a four month leave, BOYNTON decided to request GOLDSTEIN to resign and keep Ms. Kreidler. Clark stated in correspondence to BOYNTON's Interim Assistant City Manager Carisse LeJeune recommending the GOLDSTEIN's leave not be granted, that the loss of **both** Kreidler and GOLDSTEIN would cause "undue stress to library operations."

17.     However, based on GOLDSTEIN's modified request for leave GOLDSTEIN would have returned to work prior to, or, in the worst case, contemporaneously with, Ms. Kreidler being laid off, and, therefore, the library would only lose one part-time library page, not two, and the library would not have been unduly stressed.

18.     Despite GOLDSTEIN's modification of his request for leave and despite the fact that BOYNTON, both before and after GOLDSTEIN was terminated, had given medical leave to part-time pages who were younger than GOLDSTEIN and not disabled, BOYNTON ignored its original plan to lay off Kreidler and stuck with its new plan to ask GOLDSTEIN to resign, in effect, replacing GOLDSTEIN with Kreidler. This was the case even though GOLDSTEIN, who, it bears repeating, began working for BOYNTON on March 27, 2006, had great seniority over Kreidler, who began working for BOYNTON on January 3, 2011.

19.     On July 23, 2012 the last day of work before GOLDSTEIN's surgery, BOYNTON, through Clark, in accord with his and BOYNTON's decision to, in effect, replace GOLDSTEIN with Kreidler, asked GOLDSTEIN to resign.

20.     GOLDSTEIN refused to resign because he wished to return to work in September, 2011.

21.     Thereafter, BOYNTON terminated GOLDSTEIN on July 26, 2011, one day after his

surgery.

22.     In the correspondence terminating GOLDSTEIN, a copy of which is attached hereto as Exhibit "B," BOYNTON through Julie Oldbury, Director of Human Resources for BOYNTON acknowledged that GOLDSTEIN was willing to resume working in September 2011.  In this correspondence BOYNTON suggested that due to "budgetary and operational challenges during these difficult economic times" BOYNTON is "not in a position to approve extended leaves of absence for our part time employees."  However, this statement ignores the fact that, by taking a leave of absence during the slow summer months, GOLDSTEIN was actually saving BOYNTON money and that he would be back at work before, or at the same time that, Ms. Kreidler was laid off, thereby, causing no undue stress to the library.  This statement also ignores the fact that, it bears repeating, BOYNTON, both before and after GOLDSTEIN was terminated, had given medical leave to part-time pages who were younger than GOLDSTEIN and not disabled

23.     GOLDSTEIN did not learn that BOYNTON, rather than eliminating his position suggested by Ms. Oldburry's correspondence had, in effect, replaced him with Ms. Kreidler, the younger non-disabled worker who GOLDSTEIN had previously understood was scheduled to be laid off, until on or about early November 2011 when he visited the library.  It was at that time that he began to realize that BOYNTON had discriminated against him in favor of a younger non-disabled person.

24.     Thereafter, GOLDSTEIN applied five (5) times for several library positions that he was qualified for.  BOYNTON continued to discriminate against GOLDSTEIN due to his age and disability with regard to these applications.  He applied three (3) times for a library page position, the same job he had performed competently for over five (5) years, and twice for a library aide position which is a betterment when compared to the page position but one he was also qualified for.

Of the three (3) applications for a page position, GOLDSTEIN is informed and believes that two positions were filled with younger non-disabled persons.  As for his application for the third page position, he scored the highest of all applicants, but the position went unfilled, purportedly for budgetary reasons, with BOYNTON neglecting to inform GOLDSTEIN of the outcome of his application or even communicate with him about it.

25.     GOLDSTEIN has fulfilled all conditions precedent to the bringing of this action including timely filing an administrative complaint with the Florida Commission on Human Relations ("FCHR") and obtaining a determination that "reasonable cause exists to believe that an unlawful employment practice occurred."  A copy of the notice of the cause determination and the Investigative Memorandum of the FCHR (recommending a finding that there is "reasonable cause to believe that [BOYNTON] discriminated against [GOLDSTEIN] because of his age (80) and disability") of the FCHR is attached hereto as Exhibits "C" and "D," respectively.  Pursuant to a Worksharing Agreement between the FCHR and the Equal Employment Opportunity Commission ("EEOC"), GOLDSTEIN's complaint was dual filed with both the FCHR and the EEOC so GOLDSTEIN has exhausted the required administrative remedies prior to filing suit under both the State of Florida civil rights laws and the Federal laws cited herein.

<u>**Count I: Age Discrimination in Violation of the ADEA**</u>

26.     GOLDSTEIN realleges paragraph 1 through 25, above, and incorporates same herein, and further alleges:

27.     GOLDSTEIN is a member of a class protected against discrimination by the ADEA by virtue of his age being over 40.

28.     BOYNTON's actions in terminating GOLDSTEIN and retaining a much younger library page who had been slated to be laid off and its decision not to rehire him were related to his

age and, therefore, were unlawful practices in violation of Section 623 of the ADEA.

29.     As a direct and proximate result of these actions taken by BOYNTON, GOLDSTEIN has been seriously damaged.  GOLDSTEIN's damages include, but are not limited to lost pay.

30.     BOYNTON's actions were willful within the meaning of the ADEA.

31.     GOLDSTEIN has been required to retain the undersigned attorney and is obligated to pay him reasonable attorney's fees and costs including, but not limited to, expert witness fees.

WHEREFORE, GOLDSTEIN requests the court to enter judgment in his favor and against BOYNTON:

A.  awarding lost pay;

B.  awarding an amount of liquidated damages equal to the amount of lost pay;

C.  reinstating GOLDSTEIN to his former position both on a temporary and permanent basis or, if reinstatement is impractical, awarding future lost pay;

D.  awarding attorney fees, costs including, but not limited to, expert witness fees, and prejudgment interest; and

E.  affording such other relief as justice requires.

## Count II: Age Discrimination in violation of the FCRA

32.     GOLDSTEIN realleges paragraph 1 through 25, above, and incorporates same herein, and further alleges:

33.     GOLDSTEIN is a member of a class protected against discrimination by the FCRA by virtue of his age.

34.     BOYNTON's actions in terminating GOLDSTEIN and retaining a much younger library page who had been slated to be laid off and its decision not to rehire him were related to his age and, therefore, were unlawful practices in violation of Section 760.10 of the Florida Statutes.

35.     As a direct and proximate result of these actions taken by BOYNTON, GOLDSTEIN has been seriously damaged.  GOLDSTEIN's damages include, but are not limited to lost pay, mental anguish, loss of dignity, and other intangible injuries.

36.     Pursuant to Section 760.11(5) of the Florida Statutes, punitive damages may also be awarded against BOYNTON.

37.     GOLDSTEIN has been required to retain the undersigned attorney and is obligated to pay him reasonable attorney's fees and costs including, but not limited to, expert witness fees.

WHEREFORE, GOLDSTEIN requests the court to enter judgment in his favor and against BOYNTON:

A.  awarding lost pay;

B.  awarding damages for mental anguish, loss of dignity, and other intangible injuries;

C. awarding punitive damages;

D.  reinstating GOLDSTEIN to his former position both on a temporary and permanent basis or, if reinstatement is impractical, awarding future lost pay;

E.  awarding attorney fees, costs including, but not limited to, expert witness fees, and prejudgment interest;

F.  affording such other relief as justice requires.

### Count III: Discrimination Based on Disability in Violation of the ADA

38.     GOLDSTEIN realleges paragraph 1 through 25, above, and incorporates same herein, and further alleges:

39.     GOLDSTEIN is protected against discrimination by the ADA by virtue of disability.

40.     GOLDSTEIN is a qualified individual within the meaning of Section 12111(8) of the ADA.

41.     BOYNTON's actions in terminating GOLDSTEIN without reasonably accommodating him and retaining a non-disabled library page who had been slated to be laid off as well as its decision not to rehire him were related to his disability and/or perceived disability and, therefore, violated Section 12112 of the ADA.

42.     As a direct and proximate result of these actions taken by BOYNTON, GOLDSTEIN has been seriously damaged.  GOLDSTEIN's damages include, but are not limited to lost pay, emotional distress, pain & suffering, inconvenience, mental anguish, loss of enjoyment of life, and other damages.

43.     BOYNTON engaged in this discriminatory conduct with malice and/or reckless indifference to GOLDSTEIN's federally protected rights.

44.     GOLDSTEIN has been required to retain the undersigned attorney and is obligated to pay him reasonable attorney's fees and costs including, but not limited to, expert witness fees.

WHEREFORE, GOLDSTEIN requests the court to enter judgment in his favor and against BOYNTON:

A.  awarding lost pay;

B.  awarding damages for pain and suffering, mental anguish, loss of dignity, and other intangible injuries;

C. awarding punitive damages;

D.  reinstating GOLDSTEIN to his former position both on a temporary and permanent basis or, if reinstatement is impractical, awarding future lost pay;

E.  awarding attorney fees, costs including, but not limited to, expert witness fees, and prejudgment interest;

F.  affording such other relief as justice requires.

### Count IV: Discrimination on the Basis of Handicap in violation of the FCRA

45.      GOLDSTEIN realleges paragraph 1 through 25, above, and incorporates same herein, and further alleges:

46.      GOLDSTEIN is protected against discrimination by the FCRA virtue of his handicap.

47.      BOYNTON's adverse employment decisions to terminate him and retain a non-handicapped library page who had been slated to be laid off and to not rehire him were related to his being handicapped and, therefore, were unlawful practices in violation of Section 760.10 of the Florida Statutes.

48.      As a direct and proximate result of these actions taken by BOYNTON, GOLDSTEIN has been seriously damaged.  GOLDSTEIN's damages include, but are not limited to lost pay, mental anguish, loss of dignity, and other intangible injuries.

49.      Pursuant to Section 760.11(5) of the Florida Statutes, punitive damages may also be awarded against BOYNTON.

50.      GOLDSTEIN has been required to retain the undersigned attorney and is obligated to pay him reasonable attorney's fees and costs including, but not limited to, expert witness fees.

WHEREFORE, GOLDSTEIN requests the court to enter judgment in his favor and against BOYNTON:

A.  awarding lost pay;

B.  awarding damages for mental anguish, loss of dignity, and other intangible injuries;

C. awarding punitive damages;

D.  reinstating GOLDSTEIN to his former position both on a temporary and permanent basis or, if reinstatement is impractical, awarding future lost pay;

E.    awarding attorney fees, costs including, but not limited to, expert witness fees, and

prejudgment interest;

    F.   affording such other relief as justice requires.

**<u>Demand for Jury Trial</u>**

GOLDSTEIN demands a trial by jury of all issues so triable.

Respectfully submitted,

**/s/ Barry S. Balmuth**         
**BARRY S. BALMUTH**
**Board Certified Civil Trial Lawyer**
**and Business Litigation Lawyer**
Attorney for GOLDSTEIN
Florida Bar No.: 868991
E-mail: balmuthlaw@alum.emory.edu
BARRY S. BALMUTH, P.A.
Centurion Tower - Eleventh Floor
1601 Forum Place, Suite 1101
West Palm Beach, Florida 33401
Telephone: (561) 242-9400
Facsimile: (561) 478-2433